18-2485
Islam v. Barr

BIA
Christensen, IJ
A206 421 090

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

## <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 11th day of December, two thousand twenty.

PRESENT:
>        JON O. NEWMAN,
>        JOSÉ A. CABRANES,
>        MICHAEL H. PARK,
>              *Circuit Judges.*

_____

SAIFUL ISLAM,
>        *Petitioner,*

>        v.                                              18-2485
>                                                        NAC

WILLIAM P. BARR, UNITED STATES
ATTORNEY GENERAL,
>        *Respondent.*

_____

FOR PETITIONER:          Salim Sheikh, Esq., New York, NY.

FOR RESPONDENT:          Ethan P. Davis, Acting Assistant
                         Attorney General; Anthony C.
                         Payne, Assistant Director; Joseph
                         D. Hardy, Trial Attorney, Office

of Immigration Litigation, United States Department of Justice, Washington, DC.

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is DENIED.

Petitioner Saiful Islam, a native and citizen of Bangladesh, seeks review of a July 25, 2018, decision of the BIA affirming an August 9, 2017, decision of an Immigration Judge ("IJ") denying Islam's application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *In re Saiful Islam,* No. A 206 421 090 (B.I.A. July 25, 2018), *aff'g* No. A 206 421 090 (Immig. Ct. N.Y. City Aug. 9, 2017). We assume the parties' familiarity with the underlying facts and procedural history.

Under the circumstances of this case, we have reviewed both the BIA's and IJ's decisions. *See Yun-Zui Guan v. Gonzales*, 432 F.3d 391, 394 (2d Cir. 2005). The applicable standards of review are well established. *See* 8 U.S.C. § 1252(b)(4)(B); *Hong Fei Gao v. Sessions*, 891 F.3d 67, 76 (2d Cir. 2018) (reviewing adverse credibility determination under a substantial evidence standard). "Considering the

2

totality of the circumstances, and all relevant factors, a trier of fact may base a credibility determination on . . . the consistency between the applicant's or witness's written and oral statements . . . , the internal consistency of each such statement, the consistency of such statements with other evidence of record . . . , and any inaccuracies or falsehoods in such statements, . . . or any other relevant factor." 8 U.S.C. § 1158(b)(1)(B)(iii).  "We defer . . . to an IJ's credibility determination unless . . . it is plain that no reasonable fact-finder could make such an adverse credibility ruling."  *Xiu Xia Lin v. Mukasey*, 534 F.3d 162, 167 (2d Cir. 2008)*; accord Hong Fei Gao*, 891 F.3d at 76.  Substantial evidence supports the agency's determination that Islam was not credible as to his claim that he was persecuted in Bangladesh by the Awami League ("AL") on account of his support for the Bangladesh Nationalist Party.

The agency reasonably relied on discrepancies between Islam's statements at his credible fear interview and his subsequent testimony.  As an initial matter, the interview record bore sufficient "hallmarks of reliability" because the interview was memorialized in a typewritten list of questions

3

and answers, Islam had an interpreter, his responses indicated that he understood the questions, and the questions included inquiries about past harm and fear of future harm as needed to elicit an asylum claim. *Ming Zhang v. Holder*, 585 F.3d 715, 725 (2d Cir. 2009). The asylum officer also told Islam at the start of the interview that his statements would be kept confidential, and the interview record does not reveal that Islam was reluctant to reveal information. Nor does it appear that Islam had reason to be particularly wary of government officials: he was never arrested in Bangladesh, and he testified that he was ignored, not harassed, when he tried to seek help from the police. *See Ramsameachire v. Ashcroft*, 357 F.3d 169, 180 (2d Cir. 2004) ("[A]n interview may be deemed less reliable if the alien appears to have been reluctant to reveal information . . . because of prior interrogation sessions or other coercive experiences in his or her home country."). Moreover, although Islam declined to have his attorney present for the interview, he was represented and his opportunity to speak with an attorney before the interview lessens the likelihood that it was coercive. *See Yun-Zui Guan*, 432 F.3d at 397 n.6 ("[A]n

4

alien's mere recitation that he was nervous or felt pressured during an airport interview will not automatically prevent the IJ or BIA from relying [o]n statements in such interviews when making adverse credibility determinations."). Because the record of the credible fear interview was reliable, substantial evidence supports the agency's determination that Islam was not credible.

First, Islam's testimony and statements at his credible fear interview were inconsistent regarding the first time that he was threatened by AL supporters. Although Islam testified that he did not mention a 2012 incident at his interview because he was afraid, the IJ was not required to accept this explanation, particularly as it does not explain why he identified other harm and stated that his first interaction with the AL was a warning in 2013. *See Majidi v. Gonzales*, 430 F.3d 77, 80 (2d Cir. 2005) ("A petitioner must do more than offer a plausible explanation for his inconsistent statements to secure relief; he must demonstrate that a reasonable fact-finder would be *compelled* to credit his testimony." (internal quotation marks and citations omitted)).

5

Second, Islam omitted from his credible fear interview the most serious incident to which he testified, an alleged August 2012 beating resulting in his hospitalization. The IJ reasonably rejected Islam's explanation that he was afraid and thought immigration officials would think he was a bad person because he disclosed another incident where he escaped an attack. *See id.* These "dramatically different" accounts as to the timeline of events and whether Islam was ever physically harmed provide substantial evidence for the adverse credibility determination. *Id.*

Third, as the IJ noted, Islam's testimony and statements at his credible fear interview were inconsistent regarding the date he escaped a confrontation with AL members. Fourth, Islam's testimony and statements at his credible fear interview were inconsistent regarding whether there was a complaint filed against him with the police. The IJ was not required to accept Islam's explanation that he was not sure if a complaint was filed because it did not explain why Islam told the asylum officer that there was a false complaint. *See id.* Fifth, Islam's testimony was inconsistent with his father's affidavit regarding whether he was alone when he was

6

threatened in February 2012.  The IJ was not required to credit Islam's explanation that his father was in a rickshaw close behind him given that Islam did not mention this fact when asked if he was alone.  *See id.*

Finally, the agency also reasonably concluded that Islam failed to rehabilitate his credibility with reliable corroborating evidence.  *See Biao Yang v. Gonzales*, 496 F.3d 268, 273 (2d Cir. 2007) ("An applicant's failure to corroborate his . . . testimony may bear on credibility, because the absence of corroboration in general makes an applicant unable to rehabilitate testimony that has already been called into question.").  The IJ reasonably declined to give weight to affidavits from Islam's family and colleagues that contained identical language and included language from Islam's asylum application.  *See Mei Chai Ye v. U.S. Dep't of Justice*, 489 F.3d 517, 524 (2d Cir. 2007) ("embrac[ing] the commonsensical notion that striking similarities between affidavits are an indication that the statements are 'canned'"); *Singh v. BIA*, 438 F.3d 145, 148 (2d Cir. 2006) (upholding adverse credibility determination partly based on significantly similar language in supporting affidavits).

Given the inconsistencies between the credible fear interview and Islam's testimony, Islam's omission of the most serious incident of harm at his interview, the inconsistency between Islam's and his father's statements, and the similarities among the affidavits, substantial evidence supports the adverse credibility determination. *See Xiu Xia Lin*, 534 F.3d at 167; *Singh*, 438 F.3d at 148. Because Islam's claims were all based on the same factual predicate, the adverse credibility determination is dispositive of asylum, withholding of removal, and CAT relief. *See Paul v. Gonzales*, 444 F.3d 148, 156–57 (2d Cir. 2006).

For the foregoing reasons, the petition for review is DENIED. All pending motions and applications are DENIED and stays VACATED.

FOR THE COURT:
Catherine O'Hagan Wolfe,
Clerk of Court

8